**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN LITTON,**

|  |  |  |
|---|---|---|
| | **Plaintiff,** | 08-CV-1340 |
| **vs.** | | **(NAM/DRH)** |

**AVOMEX INC. and AMS STAFF LEASING,**

**Defendants.**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Bantle & Levy LLP | Robert L. Levy, Esq. |
| 817 Broadway | |
| New York, New York 10003 | |
| and | |
| Gleason, Dunn, Walsh & O'Shea | Ronald G. Dunn, Esq. |
| 40 Beaver Street | |
| Albany, New York, 12207 | |
| *Attorneys for Plaintiff* | |
| | |
| Bracewell & Giuliani LLP | Kenneth Caruso, Esq. |
| 1177 Avenue of the Americas | |
| Suite 1900 | |
| New York, New York 10336-2714 | |
| *Attorneys for Defendant Avomex Inc.* | |
| | |
| Bond, Schoeneck & King, PLLC | Nicholas J. D'Ambrosio, Jr., Esq. |
| 111 Washington Avenue | |
| Albany, New York 12210 | |
| and | |
| Reid & Dennis, P.C. | William E. Reid, Esq. |
| Providence Towers | Jacqueline Montejano, Esq. |
| Suite 255W | |
| 5001 Spring Valley Road | |
| Dallas, Texas 75244-3914 | |
| *Attorneys for Defendant AMS Staff Leasing* | |

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

Plaintiff John Litton ("plaintiff") commenced this action against defendants for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 600 *et seq.* and New York State Executive Law § 290, *et. seq.* a/k/a "Human Rights Law" ("NYHRL").

Presently before the Court are motions by both defendants and a cross motion by plaintiff. Defendant AMS Staff Leasing moves for an order: (1) dismissing plaintiff's complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative; (2) dismissing plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative; (3) for a transfer of venue to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).[1]  (Dkt. No. 10).

Defendant Avomex Inc. moves for an order: (1) dismissing plaintiff's complaint based upon lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or, in the alternative; (2) dismissing plaintiff's complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative; (3) for a transfer of venue to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 14).

Plaintiff has opposed defendants' motions and has cross-moved to amend the complaint. (Dkt. Nos. 16, 18).

## FACTUAL BACKGROUND

The facts of the case are taken from plaintiff's complaint and are, for the purpose of defendants' motions, presumed to be true.  Avomex, Inc. ("Avomex") is a Texas corporation with its principal place of business in Fort Worth, Texas.  Avomex claims to be a family-owned private

---

[1] Counsel for defendant AMS Staff Leasing has submitted the within motion on behalf of "Defendant Breckenridge Enterprises, Inc. (incorrectly identified as 'AMS Staff Leasing')".

corporation offering a variety of avocado products such as "Wholly Guacamole" and "Wholly Salsa". AMS Staff Leasing ("AMS") is a staff leasing company and is a Texas corporation with its principal place of business in Dallas, Texas. Plaintiff is a New York State resident and lives in New Paltz, New York.

From December 2003 until June 2006, plaintiff was employed by Avomex and/or AMS as Avomex's Northeast Regional Manager. Plaintiff alleges that in December 2003, Avomex and AMS entered into a staff-leasing agreement ("SLA") pursuant to which they became co-employers of plaintiff.[2] Plaintiff claims that pursuant to the SLA, Avomex and AMS were jointly responsible for the continuation of plaintiff's employment with Avomex, including the hiring, firing, disciplining, reassigning and/or termination of plaintiff.[3] Moreover, plaintiff contends that AMS maintained the right, as plaintiff's co-employer, to make personnel decisions regarding plaintiff and to pay plaintiff's salary, and provide him with Workers' Compensation Insurance coverage. Plaintiff claims that he "performed the vast majority of his duties of Northeast Regional Manager" out of his New Paltz office.[4] Plaintiff's day-to-day performance was supervised by Avomex's senior management. Plaintiff claims that he was paid by AMS and received "benefits through AMS".

In May 2006, plaintiff sent an email to Steven Parnell ("Parnell"), Avomex's President and Cindy Wong ("Wong"), Avomex's Vice President of Sales, expressing his interest in being considered for a sales management position with Avomex. In May 2006, during a national trade show in Chicago, Illinois, plaintiff spoke with Parnell about his interest in the position on

---

[2] The SLA is not part of the record herein.

[3] The complaint does not indicate how or when plaintiff became involved or employed with AMS.

[4] The complaint does not indicate how long plaintiff resided or worked out of New York.

3

"multiple occasions".  On the last day of the trade show, Parnell told plaintiff to speak with Wong about the position.  The next day, plaintiff met with Wong and alleges that Wong told him that, "he was too old to handle the demands of those positions because they required late nights and early mornings".[5]  Plaintiff claims that Wong told him that she would not support him for any sales management position due to his age. The next day, plaintiff telephoned Parnell to discuss Wong's comments.[6]

Approximately one week later, Parnell telephoned plaintiff and advised plaintiff that he was terminated "effective immediately".[7]   Upon receiving notice of his termination, plaintiff telephoned AMS and was advised that AMS would, "acquiesce in and adhere to Avomex's termination decision".[8]  Plaintiff filed a Charge of Discrimination with the New York District Office of the U.S. Equal Employment Opportunity Commission ("EEOC").  On September 16, 2008, plaintiff received a right to sue notification from the EEOC.  On December 15, 2008, plaintiff filed the within complaint.  The complaint was served upon defendants in January 2009.

Plaintiff asserts that defendants discriminated and retaliated against plaintiff and substantially interfered with plaintiff's continuing opportunities for professional advancement, career development, increased compensation and other benefits of employment.  Plaintiff claims that he suffered serious pain, severe mental and emotional harm and distress.

## DISCUSSION

---

[5] The complaint does not indicate where this meeting occurred.  However, Wong and Parnell claim that the meeting occurred in Illinois.

[6] The complaint does not indicate where plaintiff placed the phone call from or where Parnell was located when the phone call took place.  Parnell claims that plaintiff was still in Illinois and that Parnell was in Texas.

[7] The complaint does not indicate where the call originated from or where plaintiff was located when he received the call.

[8] The complaint does not indicate who plaintiff spoke with or when this conversation took place.

4

**I.      Avomex's Motion to Dismiss for Lack of Personal Jurisdiction[9]**

Avomex moves to dismiss the complaint based upon lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2).  The amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with "federal law" entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee. *Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 223 (2d Cir. 1963).  District courts resolving issues of personal jurisdiction must therefore engage in a two-part analysis. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).  First, they must determine whether there is jurisdiction over the defendant under the relevant forum state's laws. *Id.*  Second, they must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements. *Id.*

Since there has been no discovery and no evidentiary hearing on jurisdiction, plaintiff need make only a *prima facie* showing that jurisdiction is proper. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196-97 (2d Cir. 1990).  The Court must construe the pleadings and supporting affidavits in the light most favorable to plaintiff. *See PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).  The Second Circuit explains:

> In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway.  It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.  If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials. Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial.  But until such a hearing is

---

[9] AMS has not moved for this relief.

> held, a prima facie showing suffices, notwithstanding any
> controverting presentation by the moving party, to defeat the motion.

*Marine Midland Bank N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) (citations omitted).

Plaintiff argues that jurisdiction exists over defendant pursuant to N.Y. C.P.L.R. § 301 and

alternatively, pursuant to § 302, the long-arm statute.

### A.    N.Y. C.P.L.R. § 301

Pursuant to C.P.L.R. § 301, a defendant is considered to be "present" in the state for the

purpose of general jurisdiction if such corporation is "doing business" in the state. *Sun Micro*

*Med. Tech. v. Passport Health Commc'n, Inc.*, 2006 WL 3500702, at *6 (S.D.N.Y. 2007).  The

phrase "doing business" has been interpreted to mean that the defendant is "engaged in such a

continuous and systematic course of doing business" as to warrant a finding of its "presence" in

the jurisdiction.  *Ball*, 902 F.2d at 198.  Because a corporation amenable to jurisdiction under this

section may be sued on causes of action wholly unrelated to the acts done in New York, a

showing that it is doing business in New York must be made with "a fair measure of permanence

and continuity".  *Id.* (citing *Laufer v. Ostrow*, 55 N.Y.2d 305, 310 (1982)).  Factors to consider

include whether the defendant: (1) has an office in the state; (2) solicits business in the state; (3)

owns property or bank accounts within the state; or (4) has employees or agents within the state.

*Sun Micro Med. Tech.*, 2006 WL 3500702, at *6.  Mere sales of a manufacturers product in New

York and the solicitation of business alone have never made a foreign corporation amenable to

suit in this jurisdiction.  *Landoil Res. Corp. v. Alexander*, 77 N.Y.2d 28, 34 (1990).  The

defendant must engage in "substantial solicitation" of business in New York that is "continuous"

and also engage in other activities of substance within New York.  *Stephan v. Babysport*, LLC,

499 F.Supp.2d 279, 285 (E.D.N.Y. 2007) (citing *Landoil*, 918 F.2d at 1043-44).  Telephone and

email communications to New York are insufficient to satisfy CPLR § 301.  *Patel v. Patel*, 497 F.Supp.2d 419, 426 (E.D.N.Y. 2007) (holding that one telephone call and two emails to the plaintiffs failed to establish that "doing business" in New York) (citing *Avecmedia, Inc. v. Gottschalk*, 2004 WL 1586411, at *6, n. 2 (S.D.N.Y. 2004)).  The relevant time period for the jurisdictional inquiry is the time of service of the summons and complaint.  *Id*.

In support of the motion, defendant submitted an affidavit from Parnell, the President of Avomex.  Parnell states that at the time the complaint was filed, Avomex did not have any employees in New York, Avomex did not maintain an office in New York and Avomex did not have bank accounts or property in New York.   Plaintiff does not dispute these assertions.  However, plaintiff contends that Avomex's business operations in New York are "robust, systematic and ongoing" and provided an affidavit stating that Avomex sold and distributed food products within New York.  Plaintiff provided monetary figures purporting to be the amount of those sales.  Even assuming plaintiff's assertion to be true, the sales of defendant's product, however substantial, do not make defendant amendable to suit within New York.  *See Stephan*, 499 F.Supp.2d at 285.  Plaintiff must also demonstrate that defendant solicited business and engaged in some additional activities within New York.  To this end, plaintiff relies upon defendant's "ongoing communication between Avomex and plaintiff in New York" in an attempt to obtain jurisdiction under this statute.  As noted, the relevant time of inquiry for jurisdictional purposes is the time of the service of the summons and complaint, January 2009.   Plaintiff has not allege that he had any communication with Avomex in 2009.  Indeed, plaintiff does not claim that he spoke with anyone at Avomex at any time after he was terminated in 2006.  Moreover, telephone and email communication, without more, does not establish that defendant was "doing business" in New York with a degree of permanency.  As plaintiff has failed to allege any other

substantial or continuous conduct necessary for this Court to find jurisdiction over defendant under CPLR § 301, the Court finds that Avomex was not "doing business" in New York with the continuity required to confer jurisdiction under Section 301. *See Maurice-Silvera Inc. v. Nat'l Ctr. for Employment of the Disabled*, 2003 WL 262508, at *3 (S.D.N.Y. 2008).

### B.    N.Y. C.P.L.R. § 302(a)

Plaintiff contends that Avomex is subject to specific jurisdiction under New York's long-arm statute on the ground that plaintiff's claims arise from defendant's transaction of business and commission of torts outside New York causing injury to plaintiff in New York. *See* N.Y. C.P.L.R. § 302(a).[10]

### 1.    N.Y. C.P.L.R. § 302(a)(1)

N.Y.C.P.L.R. § 302(a)(1) authorizes personal jurisdiction over a non-domiciliary defendant who "transacts any business within the state".  In New York, a non-domiciliary

---

[10] N.Y. C.P.L.R. § 302(a) provides:

> Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> > (I) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> >
> > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

8

transacts business under C.P.L.R. § 302(a)(1) when "he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws". *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (citations omitted). To obtain jurisdiction under § 302(a), the cause of action must "aris[e] from" the specific New York business transaction; this provision requires a "substantial relationship between the transaction and the claim asserted[.]" *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1998). A cause of action "arises from" a defendant's New York contacts if the contacts are "substantially proximate to the allegedly unlawful acts." *Int'l Healthcare Exch. v. Global Healthcare Exch., LLC.*, 470 F.Supp.2d 345, 358 (S.D.N.Y. 2007) (citations omitted); *see also Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F.Supp.2d 367, 387 (S.D.N.Y. 2006) (holding that even if the "transacts business" requirement is satisfied, jurisdiction under § 302(a)(1) is not proper unless the cause of action "arises from" the defendant's contacts with the forum state). Jurisdiction is rarely based solely on a defendant's telephone calls into New York. *Int'l Healthcare Exch.*, 470 F.Supp.2d at 358 (citing *Whitaker v. Fresno Telesat, Inc.*, 87 F.Supp.2d 227, 230 (S.D.N.Y. 1999)). Ultimately, the court must examine the totality of the circumstances to determine whether activities within the state are sufficient to support jurisdiction. *Id*.

Plaintiff argues that Avomex purposefully engaged in business activity by employing plaintiff as a Northeast Regional Manager with an office in New York and further, having sustained communications with plaintiff within New York. Defendant argues that plaintiff has not established that any business that defendant transacted in New York gave rise to plaintiff's causes of action.

In support of jurisdiction, plaintiff cites to Avomex's business activity in New York and claims:

> The fundamental nature of plaintiff's employment relationship with Avomex was to promote the sale and distribution of the company's goods within New York State . . . To this end, plaintiff engaged in substantial and sustained business activity on behalf of Avomex within New York State.  As a direct result of this activity, Avomex entered into contractual relationships with customers within the State of New York for the sale and distribution of their goods therein.  In these ways, Avomex "purposefully avail[ed] itself of the privilege of conducting activities" with the State of New York.

Even assuming that plaintiff's allegations are true, plaintiff has failed to establish, or even argue, that defendant's "business activity" has any relationship or nexus to the subject matter of plaintiff's lawsuit.  *See Curto v. Medical World Communications, Inc.*, 388 F.Supp.2d 101, 114 (E.D.N.Y. 2005) (holding that the plaintiff's defamation claim did not rise out of the defendant's purported acts within New York which included coming to New York for client meetings, executing contracts to supply goods and services in New York, and entertaining clients in New York).  Plaintiff has not alleged that he suffered from any injury as a result of defendant's business in New York or from any transaction or sale of goods in New York.

Moreover, although plaintiff alleges that he communicated with Avomex employees via telephone, email and facsimile, plaintiff has failed to allege that any of those communications gave rise to his causes of action for discrimination or retaliation.  Plaintiff submitted an affidavit stating that, "my direct supervisor, Cindy Wong, and to a lesser extent, Avomex's President, Steven Parnell, regularly and routinely communicated with me within the State of New York via telephone and email communications".  Plaintiff further averred that, "[t]hese communications generally involved providing me guidance in the performance of my duties, and my reporting on the particulars of my sales activities".  By plaintiff's own assertions, these communications have no relationship to plaintiff's age discrimination and retaliation claims.

10

In support of jurisdiction under this statute, plaintiff cites to *International Healthcare Exchange,* but plaintiff's reliance upon that holding is misplaced.  In that case, the plaintiff alleged that she received work assignments by phone, email and fax and that these assignments were specific instances of illegal and disparate treatment and further, that discussions concerning her complaints about her work assignments took place via the same channels.  *Int'l Healthcare Exch.,* 470 F.Supp.2d at 358.  Therefore, the court held that the defendant's conduct was sufficient to demonstrate a purposeful transaction of business that had a substantial nexus to the plaintiff's employment discrimination cause of action within the meaning of § 302(a)(1).  *Id.*

In the complaint, plaintiff alleges that, "[a]pproximately one week after Litton raised concerns regarding age discrimination in the workplace at Avomex, Parnell telephoned Litton and notified him that his position at Avomex was being eliminated and the he was terminated effective immediately".  Plaintiff has not provided any further information with regard to the telephone conversation.  Even if the Court assumes that the conversation occurred while plaintiff was in New York and that the conversation has a substantial nexus to plaintiff's causes of action, one telephone phone call regarding plaintiff's termination is not enough to establish that Avomex was physically present within the state for jurisdictional purposes of a claim of discrimination and retaliation.  *See Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 2002 WL 719471, *3 (E.D.N.Y. 2002) (the only direct contact between the defendant and the plaintiff were a few letters sent from Colorado via mail or fax to Brooklyn).  Based upon the totality of the circumstances, defendant's activities within New York are insufficient to subject Avomex to jurisdiction under § 302(a)(1).

       **2.**         **N.Y. C.P.L.R. § 302(a)(3)**

Plaintiff also attempts to obtain jurisdiction over Avomex under this section of the long-arm statute and claims that the discriminatory and retaliatory termination of his employment caused him to suffer injury in New York.  Moreover, plaintiff alleges that defendant derived substantial revenue from its sales and distribution of goods in New York and from interstate/international commerce.  Under C.P.L.R. § 302(a)(3) personal jurisdiction may be asserted over a non-domiciliary if the non-domiciliary "commits a tortious act without the state" injuring a person within New York, and either (I) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

### a.    Situs of Injury Test

The Court must first engage in a determination of whether or not defendant committed a tortious act outside of New York that injured a person within New York.  "[C]ourts determining whether there is injury in New York must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury."  *Bank Brussels Lambert*, 171 F.3d at 791 (citations omitted).  The original event occurs where the first effect of the tort, that produced the final economic injury, is located.  *DiStefano v. Carozzi North America, Inc*., 286 F.3d 81, 85 (2d Cir. 2001).  When a person is employed in New York (or performs a substantial part of the duties of his employment in New York), his experience of being removed from that employment (or from those duties) is a New York event that constitutes "the first effect of the tort" of discharging the employee.  *Id*. (holding that the plaintiff experienced the "first effect" of losing his job in New

12

York even though the decision to terminate the plaintiff was made outside New York) (citing *Bank Brussels Lambert*, 171 F.3d at 792).

In this case, plaintiff resided in and performed a substantial part of his employment in New York. Because plaintiff's employment took place in New York, the "original event" (plaintiff's termination) which allegedly caused injury to plaintiff, occurred in New York. Accordingly, the Court finds that the first requirement of § 302(a)(3) has been satisfied.

### b.   Substantial Revenue

A court may exercise personal jurisdiction over a defendant pursuant to this statute only if one of the following two alternatives are met: (1) defendant regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state; or (2) defendant expects or should reasonably expect the act to have consequences in the state and defendant derives substantial revenue from interstate or international commerce. N.Y. C.P.L.R. §§ 302(a)(3)(I); 302(a)(3)(ii).

Substantial revenue can mean either a substantial sum of money or that the defendant's interstate revenue is a substantial portion of its total revenue. *Launer v. Buena Vista Winery, Inc.*, 916 F.Supp. 204, 211 (E.D.N.Y. 1996). The amount of business that must be conducted to satisfy this standard "is less than that which is required to satisfy the conventional doing business standard". *Hollins v. U.S. Tennis Ass'n*, 469 F.Supp.2d 67, 77 (E.D.N.Y. 2006). Substantial revenue can be measured in an absolute or relative sense or by qualitative or quantitative means. *Jin v. EBI, Inc.*, 2006 WL 3335102, at *5 (E.D.N.Y. 2006). Even if the amount of revenue a company generates in New York is only 1% percent of its total revenue, it can still be considered substantial if the absolute amount appears substantial. *Id.* (citing *Ball*, 902 F.2d at 199). On a

13

motion to dismiss for lack of jurisdiction pursuant to § 302(a)(3), defendant has the burden of

showing the absence of substantial revenue. *Ingraham v. Carroll*, 90 N.Y.2d 592, 604 (1997).

The year in which the complaint is filed is the proper point in time for determining

whether defendant "derives substantial revenue from goods used or consumed in New York under

§ 302(a)(3)(I)" or meets the "substantial revenue" prong of 302(a)(3)(ii). *Bank of California v.*

*Smith Barney, Inc*., 1997 WL 736529, at *5, n. 5 (N.D.N.Y. 1997) (citing *Ball*, 902 F.2d at 199-

200); *Drake v. Lab. Corp. of Am. Holdings*, 2007 WL 776818, at *10 (E.D.N.Y. 2007).  However,

courts will also consider a period of years around the time that the complaint was filed.  *Drake*,

2007 WL 776818, at *10 (citation omitted); *see also Traver v. Officine Meccaniche Toshci SpA*,

233 F.Supp.2d 404, 413-14 (N.D.N.Y. 2002) (citing *Barricade Books, Inc. v. Langberg*, 2000 WL

1863764, at *5 (S.D.N.Y. 2000)) (the court considered the defendant's revenues over a three-year

period).

## I.       Section 302(a)(3)(I)

In this matter, plaintiff claims Avomex derived substantial revenue from its sales and

distribution of goods in New York.  Specifically, plaintiff contends that in 2006, Avomex's total

sales in the Northeast region were $2,500,000.  Plaintiff also alleges that approximately

$1,000,000 of those sales were to customers who purchased and/or received Avomex's product

within New York.[11]  Avomex claims that their total sales revenue for products shipped to New

York was .8% of total sales for all of Avomex's customers from November 23, 2003 through July

1, 2006 and further that the sales revenue attributable to products shipped to New York was .9%

of total sales for Avomex's Foodservice customers (in the area plaintiff was responsible for) from

---

[11] The record lacks any evidence with regard to Avomex's revenue in 2008, the year the complaint was
filed.

November 23, 2003 until July 1, 2006.  Although defendant has claimed that it's total sales revenue for New York was less than 1% of total sales, defendant has failed to provide the Court with the monetary amount of total sales for any calendar year.  Therefore, the Court has no basis upon which to conclude that defendant did not derive substantial revenue from goods and/or services rendered in New York.

        **ii.**       **302(a)(3)(ii)**

Plaintiff alleges that jurisdiction is also appropriate under this prong because Avomex should reasonably have expected its unlawful acts to have consequences within the State of New York and Avomex derives substantial revenue from the nationwide sale and distribution of its products.

The expectation element is construed to be a "foreseeability requirement" that "relates to forum consequences generally and not to the specific event which produced the injury within the state". *Roland*, 2001 WL 241792, at *2.  The Court should explore whether or not the defendant had reason to expect that its decision to terminate the plaintiff would have direct consequences in New York.  *See Roland v. Margi*, 2001 WL 241792, at *3 (W.D.N.Y. 2001) (the plaintiff utilized a New York telephone number for company business, the defendant procured office equipment for the plaintiff to work from home and the plaintiff had regular contact with the defendant's California headquarters when she worked in New York).

Defendant concedes that plaintiff's orders were coordinated out of Texas, plaintiff was managed out of Texas and his computer and network were based out of Texas.  Thus, there has been a sufficient showing that defendant had a reason to expect that any decision made in Texas to terminate plaintiff would have direct consequences in New York.

15

Plaintiff has not provided any evidence regarding defendant's revenue from interstate or international commerce for any year.[12]  However, defendant does not dispute the allegation that Avomex derives substantial revenue from interstate or international commerce.  Moreover, "dismissal is inappropriate even where there is no proof that a defendant 'derives substantial revenue from interstate [] commerce' where that knowledge is peculiarly under the control of the defendant and may come to light in the course of subsequent discovery".  *City of New York v. A-1 Jewelry & Pawn, Inc*., 501 F.Supp.2d 369, 418 (E.D.N.Y. 2007) (citations omitted).

The Court finds that plaintiff has met his burden at this stage of the inquiry, and set forth sufficient evidence to constitute a *prima facie* showing that defendant derived substantial revenue in New York within the meaning of § 302(a)(3)(I).  Further, plaintiff has demonstrated that defendant could have or should have expected their acts to have consequences in New York.  As no discovery has taken place, the Court is constrained to find, with certainty, that defendant did not derive substantial revenue from interstate or international commerce.  *See Drake*, 2007 WL 776818, at *13 (denying the defendant's motion to dismiss for lack of personal jurisdiction and holding that the plaintiff's allegations may prove sufficient to establish a *prima facie* showing of personal jurisdiction after further discovery).

c.      **Due Process**

If the Court determines that the exercise of long-arm jurisdiction is appropriate, the Court must also discuss whether the exercise of jurisdiction under CPLR § 302 comports with due

---

[12] In plaintiff's affidavit, plaintiff provided sales figures for Avomex in the Northeast Region and Northern District of New York.  The record does not contain any other information with regard to defendant's sales or revenue. Plaintiff claims that in 2006, Avomex's New York sales were roughly $1,000,000. In response, defendant argues that, "Avomex's New York sales are less than one percent of its revenues". Based upon counsel's arguments, the Court can infer that in 2006, defendant derived substantial revenue from interstate or international commerce.

16

process - i.e., whether defendant has "certain minimum contacts with New York such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice". *Roland*, 2001 WL 241792, at *2 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The due process test has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. *Del Ponte v. Universal City Dev. Partners, Ltd.*, 2008 WL 169358, at *5 (S.D.N.Y. 2008) (citing *Metro. Life Ins. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)).

In determining minimum contacts, the court considers whether the defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate being haled into court there. *Roland*, 2001 WL 241792, at *2 (citing *World-Wide Volkswagon v. Woodson*, 444 U.S. 286, 297 (1980)). With respect to reasonableness, the Court considers a number of factors including: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interest of the forum state in adjudicating the case; (3) the plaintiff's interest in objecting convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies". *Id.* (citing *Kernan v. Kurz-Hastings, Inc*., 175 F.3d 236, 244 (2d Cir. 1999)).

In the *Roland* case, the defendant provided the plaintiff with the necessary infrastructure so that the defendant could regularly and continuously deal with the plaintiff when she worked from her home office in New York. *Roland*, 2001 WL 241792, at *3. Therefore, as the defendant took purposeful action to conduct business in New York, the plaintiff established sufficient minimum contacts. *Id*. With regard to reasonableness and the second component of due process,

17

the Court concluded that even though the defendant was a California corporation and much of the evidence would likely be found in California, the conveniences of modern communication and ease of transportation alleviated any burden to the defendant of having to defend itself in New York. *Id*. Moreover, New York had a strong interest in adjudicating the dispute as plaintiff, a New York resident, had asserted claims based on the laws of New York and clearly, it was more convenient for the plaintiff to pursue these claims in New York. *Roland*, 2001 WL 241792, at *3. The interest in promoting policy did not weigh in either parties favor as both California and New York had interests in ensuring that "employment relationships are transacted lawfully". *Id*.

In this matter, the record establishes that defendant has minimum contacts in New York. Defendant provided plaintiff with the necessary equipment to perform his job duties out of his home office in New York. Therefore, defendant took purposeful action to conduct business in New York. With regard to reasonableness, plaintiff is a New York resident and thus, New York has an interest in providing a convenient forum for plaintiff, who was allegedly injured in New York and may be entitled to relief under New York law. *See Del Ponte*, 2008 WL 169358, at *12. Although defendant correctly asserts that much of the evidence will be found in Texas, including records and witness testimony, this factor alone is not enough to overcome plaintiff's showing of minimum contacts. *See Roland*, 2001 WL 241792, at *3. Moreover, in this matter, the court is faced with an additional consideration; the fact that defendant AMS has not made a motion to dismiss based upon personal jurisdiction. If this Court denies Avomex's motion to dismiss without prejudice, as the Court is inclined to do, Avomex could renew the motion upon the completion of discovery. Upon renewal, if the Court finds that there is no basis for the exercise of personal jurisdiction over Avomex, plaintiff would be compelled to litigate this matter

18

in two separate forums.  *See Del Ponte*, at *13 (citing *Kernan*, 175 F.3d at 245) (holding that it would be inefficient to conduct two separate trials and the interests of interstate judicial economy were served by upholding jurisdiction).  In sum, upon reviewing the reasonableness factors, the Court finds that the exercise of jurisdiction comports with due process.

Accepting as true all of plaintiff's allegations, and viewing the evidence most favorably to plaintiff, the Court finds that plaintiff has made a *prima facie* showing of personal jurisdiction over Avomex under N.Y.C.P.L.R. § 302(a)(3).  Based upon the above, Avomex's motion to dismiss under Fed. R. Civ. P. 12(b)(2) is denied without prejudice to renew after discovery.  Ultimately, plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence.  *See CutCo Inds., Inc.*, 806 F.2d at 365.

## II.    Motion to Dismiss for Improper Venue

Defendants assert that the complaint must be dismissed based on improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  The general federal venue statute provides in pertinent part as follows:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated; or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  Plaintiff claims that venue is proper in this district pursuant to § 1391(b)(2) because, "the unlawful acts and omissions giving rise to claims alleged herein were committed within the district of the United States District Court, Northern District of New York".  Plaintiff

19

bears the burden of demonstrating proper venue.  As with a motion to dismiss for lack of personal jurisdiction, the Court accepts all allegations in the complaint as true and may examine affidavits of other documents outside the complaint but draws all reasonable inferences and resolves all conflicts in plaintiff's favor.  *Justice, Inc. v. Just Enter., Inc*., 2007 WL 2398504, at *5 (S.D.N.Y. 2007).

Under § 1391(b)(2), for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question even if other material events occurred elsewhere.  *Justice*, 2007 WL 2398504, at *6 (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).  The fact that decisions regarding a plaintiff's employment were made elsewhere, does not necessitate the conclusion that no alleged act of discrimination occurred in the district where the plaintiff resided and worked.  *Cox v. Nat'l Football League*, 1997 WL 619839, at *3 (N.D.Ill. 1997)) (to hold otherwise would allow employers everywhere "to make their decisions to terminate and discipline in far away offices in order to protect themselves from litigation") (citing *McDonald v. Am. Federation of Musicians*, 308 F.Supp. 664, 669-70 (N.D. Ill. 1970)).  If a plaintiff is employed in a district at the time he is discharged, venue would be proper in that district under § 1391(b)(2).  *See Dean v. Handysoft Corp*., 2005 WL 362662, at *3 (E.D.Pa. 2005) (the plaintiff charged the defendant with racial discrimination).

In the case at hand, defendant alleges that all significant events or omissions material to plaintiff's claim took place outside the Northern District of New York.  Specifically, Avomex alleges that the alleged discriminatory conduct either took place at the trade show in Chicago or

in Texas where the Avomex executives decided to eliminate plaintiff's position.[13]  Moreover,

AMS argues that any decision by AMS regarding plaintiff's employment was also made in Texas,

at AMS' corporate offices.  Plaintiff contends that the adverse employment actions taken against

plaintiff materially affected the terms of his employment within the Northern District of New

York and the impact was felt extensively in this district.

   The parties cite to various cases in support of their arguments that are either factually

inapposite or involve a motion to change venue pursuant to § 1404 rather than a motion to dismiss

for improper venue.  A motion for removal based upon *forum non conveniens* involves a legal

analysis different from the examination that the Court engages in on a motion to dismiss for

improper venue.  *See New Son Yeng Produce, LLC. v. A & S Produce, Inc.*, 2009 WL 2568566, at

*3 (E.D.N.Y. 2009) (a transfer under § 1404 is within the Court's discretion).  The record

establishes that plaintiff resided in New York, worked in New York and was present in New York

when he received communication from Avomex advising him that he was terminated.  Thus,

significant events material to plaintiff's claim occurred in the Northern District of New York.

Accordingly, venue is proper in this district and defendants' motion for dismissal on this basis is

denied.

**III.**   **AMS' Motion to Dismiss for Failure to State a Cause of Action**[14]

---

[13] From a review of the complaint, all other instances of alleged discriminatory activity took place while plaintiff was in Chicago, Illinois. In the complaint, plaintiff alleges that after he spoke with Parnell in Chicago, he spoke to Wong the next day.  It was during that conversation that Wong allegedly made discriminatory remarks. The complaint does not indicate where that conversation took place but Wong claims that the conversation took place in Chicago.

[14] Avomex has not moved for this relief.

AMS moves to dismiss the action claiming that plaintiff failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In addressing the motion, the Court accepts as true all material facts alleged in plaintiff's complaint and draws all reasonable inferences in his favor. *See McEvoy v. Spencer*, 124 F.3d 92, 95 (2d Cir. 1997). Dismissal is proper only where it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). When material outside the pleadings is submitted in connection with a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material. *See Friedl v. City of N.Y.,* 210 F.3d 79, 83 (2d Cir. 2000); *Morelli v. Cedel*, 141 F.3d 39, 45-46 (2d Cir. 1998). Although defendants have submitted evidence in support of their claim, the Court declines to convert this motion into one for summary judgment where the parties have not commenced discovery. Accordingly, the Court has confined its review to the complaint.

AMS argues that plaintiff cannot state a claim for age discrimination and retaliation because plaintiff cannot establish that AMS was his statutory employer. To determine joint employer status, the court examines the economic realities of the relationship between the alleged employer and employee. *Tullous v. Texas Aquaculture Processing Co. LLC*, 579 F.Supp.2d 811, 820 (S.D. Tex. 2008). Factors include whether the alleged employer: (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of

22

employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id.* (citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)).

AMS argues that plaintiff's vague allegations concerning a staff leasing agreement between AMS and Avomex are unsupported by facts. In the complaint, plaintiff asserts:

> Upon information and belief, in or about December 2003 Avomex and AMS entered into a staff-leasing agreement (the "SLA") pursuant to which they became co-employers of Litton.

> Upon information and belief, pursuant to the SLA, Avomex and AMS were, at all relevant times herein, jointly responsible for compliance with, *inter alia*, the ADEA and the Executive Law.

> Upon information and belief, pursuant to the SLA, Avomex and AMS were, at all relevant times herein, jointly responsible for the continuation of Litton's employment at Avomex, including, the hiring, firing, disciplining, reassigning and/or terminating Litton.

> Upon information and belief, pursuant to the SLA, AMS maintained the right, as Litton's co-employer to make personnel decisions regarding Litton and to pay Litton's salary, and provide him with Workman's Compensation Insurance coverage.

> AMS advised Litton that it was aware of the termination and that it would acquiesce in and adhere to Avomex's termination decision.

> Given Litton's outstanding employment record while employed as Avomex's Northeast Regional Manager, there is no legitimate, non-discriminatory and /or non-retaliatory justification for AMS's acquiescence in and adoption of the abrupt termination of his employment with Avomex, and/or for AMS' refusal to provide Litton additional opportunities for employment pursuant to an AMS staff leasing agreement.

*See* Plaintiff's Complaint (paragraph numbers omitted).

As the Court must accept all allegations in the complaint as true, there is clearly a sufficient factual basis to allow plaintiff to pursue his claims against AMS. Rule 8 does not require that the facts on which a claim are based be set forth in detail, for these are to be

23

ascertained in discovery. *Amarnare,* 611 F.Supp. at 350 (holding that the defendant need only be given the factual premises of the case so that it can respond).  Plaintiff alleges that AMS, "discriminated and retaliated against him and substantially interfered with plaintiff's continuing opportunities for professional advancement, career development, recognition, increased compensation and other benefits and perquisites of employment".  While the complaint is by no means a wealth of factual information, it gives defendant fair notice of the basis of plaintiff's claim.  Whether, as a matter of law, the evidence plaintiff produces in support of these claims meets the threshold for establishing that AMS was plaintiff's statutory employer for the purposes of plaintiff's discrimination and retaliation claims, is not a determination appropriate for resolution on this motion for dismissal.  The Court cannot say that plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  Further, in order to give plaintiff a reasonable opportunity to present all pertinent material, it is necessary to permit him to engage in discovery. Therefore, AMS' motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) is denied.

## IV.    Motion to Change Venue

Defendants argue that the venue of this action should be transferred to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).  Defendants contend that a transfer to Texas will promote convenience and fairness.  Plaintiff claims that defendants cannot meet their heavy burden of showing that the balances of conveniences and interests of justice weigh strongly in favor of the change in forum.

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

might have been brought". *Oparaji v. New York City Dep't of Educ.*, 172 F. App'x. 352, 354 (2d Cir. 2006). In applying this standard, the court must determine: (1) whether the action sought to be transferred is one that "might have been brought" in the transferee court; and (2) whether, considering the "convenience of parties and witnesses" and the interest of justice, a transfer is appropriate. *See Oriska Ins. Co. v. Brown & Brown of Texas, Inc.*, 2005 WL 894912, at *4 (N.D.N.Y. 2005). The burden of establishing that there should be a change of forum under § 1404(a) is on the defendant-movant. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Mason, Perrin & Kanovsky*, 709 F.Supp. 411, 417 (S.D.N.Y. 1989). The decision to grant or deny a motion to transfer is entirely within the discretion of the trial judge. *Carlton Int'l., PLC v. Am. Concord Techage, Inc.*, 1995 WL 450274, at *4 (S.D.N.Y. 1995).

An action might have been brought in another forum if, at the time the action was originally filed, "the transferee forum would have had personal jurisdiction over the defendants . . . and if venue properly lies there". *G. Angel Ltd. v. Camper & Nicholsons USA, Inc.*, 2008 WL 351660, at *3 (S.D.N.Y. 2008) (internal citations omitted) (holding that the defendants established that the action could have been brought in the transferee district as the plaintiff could have obtained diversity jurisdiction, subject matter jurisdiction, and met venue requirements over the defendants); *see also Schechter v. Tauck Tours, Inc.*, 17 F.Supp.2d 255, 258 (S.D.N.Y. 1998) (holding that the transferee court must have had subject matter jurisdiction and personal jurisdiction over the defendants).

Defendants claim that the matter could have been brought in the Northern District of Texas because the principal place of business of both AMS and Avomex are within that territory. Plaintiff does not dispute this contention. Accordingly, the Court will analyze whether a transfer

is warranted for the convenience of the parties and witnesses and in the interests of justice.  The

relevant factors to the "balance of convenience" analysis are:

> (1) the convenience to witnesses; (2) the relative ease of access to sources of proof;
> (3) the locus of operative facts; (4) plaintiff's choice of forum; (5) the relative
> familiarity of the court with the applicable law; (6) the availability of process to
> compel attendance of unwilling witnesses; (7) interests of justice and trial efficiency;
> and (8) means of the parties.

*Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (internal

citations omitted).

### A.       Convenience of witnesses

The convenience of party and nonparty witnesses may be the single most important factor

in the analysis of forum.  *Abovepeer, Inc. v. Recording Indus. Ass'n of Am.*, *Inc.*, 166 F.Supp.2d

655, 659 (N.D.N.Y. 1991) (quoting *800-Flowers v. Intercontinental Florist, Inc.*, 860 F.Supp.

128, 134 (S.D.N.Y. 1994)).  In this Circuit, a party moving under § 1404(a) is required to "clearly

specify the key witnesses to be called and must make a general statement of what their testimony

will cover".  *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 987 (E.D.N.Y. 1991) (holding

that the movant "must support the transfer application with an affidavit containing detailed factual

statements relevant to the factors [to be considered by the court in its transfer decision], including

the potential principal witnesses expected to be called and a general statement of the substance of

their testimony").  It is not enough for the parties to list a number of witnesses who live in and

around New York who "may" testify on the parties' behalf, the importance of their testimony

must also be considered.  *Kwatra v. MCI, Inc.*, 1996 WL 694444, at *2 (S.D.N.Y. 1996) (citations

omitted).

In cases involving claims of age discrimination, testimony from the plaintiff's customers, with whom he engaged in business on behalf of the defendant/company, is not material. *Kramer v. Wellman, Inc.*, 1997 WL 66776, at *2 (S.D.N.Y. 1997) (holding that the testimony of witnesses who dealt with the plaintiff solely in his capacity as a sales representative, are of doubtful relevance to the issue of whether his layoff was a pretext for age discrimination). Rather, the key witnesses are the individuals who made the decision to terminate the plaintiff. *Derthick v. Bassett-Walker, Inc.*, 1992 WL 249951, at *6 (S.D.N.Y. 1992); *see also Tralongo v. Shultz Food, Inc.*, 2007 WL 844687, at *3 (S.D.N.Y. 2007) (holding that when the plaintiff's immediate supervisors and all persons responsible for personnel decisions work outside New York, this factor favors transfer); *see also Kwatra*, 1996 WL 694444, at *2 (in a wrongful termination matter, the most crucial witnesses will be those who are able to offer proof as to the reasons for the termination).

In the case at hand, defendant AMS has submitted affidavits from three employees who are potential witnesses: Andrew Price, Risk Manager for Breckenridge Enterprises, Inc.; Sherrie Cummins, Payroll Manager for Breckenridge Enterprises, Inc.; and Jennifer Hauger, an employee of Breckenridge Enterprises, Inc.[15] All of the aforementioned individuals work at AMS' corporate office in Dallas, Texas and reside in the Dallas/Fort Worth area.[16] The proposed witnesses provided statements with regard to their general knowledge of AMS's staff leasing

---

[15] At the time the motion was submitted, all three individuals were employed by AMS.

[16] Defendant also alleges that Lynn Hanson, the President of AMS, may testify at trial and that Ms. Hanson resides in the Dallas/Fort Worth, Texas area. Defendant claims that Ms. Hanson may testify regarding staff leasing services provided by AMS to client companies and the terms of the services. Although defendant has not offered a detailed affidavit from Ms. Hanson, all that is required is that defendant names the witnesses and that the witnesses are material to the litigation and have knowledge regarding defendant's decisions. *See Butcher v. Gerber Prod.Co.*, 1998 WL 437150, at *5 (S.D.N.Y. 1998).

agreements and moreover, their specific knowledge of plaintiff's claim.  Specifically, Andrew

Price is expected to testify that AMS/Breckenridge did not terminate plaintiff.

Avomex expects Parnell and Wong, both Texas residents, to testify regarding their

personal knowledge and involvement in the decision to "eliminate" plaintiff's position.  In

support of the motion, Parnell provided an affidavit and avers that Avomex intends to call, "20

party witnesses who reside in Texas, 15 non-party witnesses who reside in Texas and 9 non-party

witnesses who do not reside in Texas, but live much closer to Texas than New York".  Parnell's

affidavit identifies each witness, where they reside and a summary of their expected testimony

including Don Bowden (owner of Avomex and Texas resident) and Vicky Worster (Avomex's

external Human Resources consultant and Texas resident).  Each witness is expected to provide

either testimony regarding the decision to terminate plaintiff or provide information that was

utilized to make that decision.

Conversely, plaintiff intends to call Cynthia Lewis and Dr. Howard Benditsky to testify

with regard to, "issues of liability and/or issues relating to my post-termination pain and suffering

and emotional distress".  Plaintiff also intends to call "my Avomex customers located in or about

the State of New York to verify my outstanding performance while employed by defendants".

Plaintiff identifies these witnesses as Tim Payne of Sysco Metro New York and "individuals

employed by Sysco, Albany and Sysco, Syracuse".  Finally, plaintiff also anticipates, "calling

witnesses located in or about the Northern District of New York to testify as to my somewhat

successful, but far from completely successful, efforts to mitigate my damages".

Upon review of the record, the Court finds that this factor favors transfer to the Northern

District of Texas.  Plaintiff has identified three proposed witnesses but failed to provide any

28

information with regard to where the witnesses reside or a summary of their proposed testimony. In fact, plaintiff has not even indicated whether or not the three individuals reside within the Northern District of New York.[17]

Moreover, with regard to Lewis and Dr. Benditsky, plaintiff has failed to identify these individuals as expert or fact witnesses.  If they are experts, their convenience is entitled to little or no weight in deciding a transfer motion and their deposition testimony could be videotaped if personal appearance at trial is impracticable.  *See Truk Int'l Fund, LP v Wehlmann*, 2009 WL 1456650, at *4, n. 2 (S.D.N.Y. 2009); *see also Tralongo*, 2007 WL 844687 at *3.  Given only the assertions presented in plaintiff's affidavit, the Court is constrained to find that plaintiff's proposed witnesses will offer testimony that is material or of significant importance.  *See Kwatra*, 1996 WL 69444, at *3 (finding that the plaintiff did not clearly state whether the listed witnesses were witnesses to the alleged discriminatory act); *see also Kramer*, 1997 WL 66776, at *2 (a comparison between the plaintiff's work performance, and that of his co-workers as reflected in company records and the testimony of those who made and oversaw the decision to terminate the plaintiff are more relevant that the subjective evaluation of the plaintiff by his customers).

All of the people mentioned in plaintiff's complaint, with the exception of plaintiff himself, reside in Texas.  The material witnesses with the most critical testimony are the individuals with personal knowledge relevant to the decision to terminate plaintiff.  In this matter, those individuals are the employees of Avomex, non-party witnesses who have information

---

[17]  Defendant argues that Tim Payne resides and works in New Jersey and claims that Dr. Benditsky resides and works in Connecticut.  Counsel for AMS visited the website for Sysco Metro New York which revealed that the offices were located in Jersey City, New Jersey. Counsel for AMS provided an affidavit in reply and claimed that she performed a nationwide search of the Public Records Database on Westlaw and found an individual named Howard Benditsky who works as a licensed psychologist and maintains a business address in Connecticut.

regarding plaintiff's termination who live and work in or near Texas, and AMS who reside and work in Texas.  Accordingly, this factor favors a transfer of venue to the Northern District of Texas.

**B.      Access to proof**

The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.  *See Aerotel Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 197 (S.D.N.Y. 2000); *see also Alonso v. Saudi Arabian Airlines Corp.,* 1999 WL 244102, at *7 (S.D.N.Y. 1999) (holding that the issue of where the personnel file is located is a matter of logistics and does not compel the transfer of venue).  This factor is entitled to little weight unless the movant makes a detailed showing of the burden it would incur absent transfer.  *Oubre v. Clinical Supplies Mgmt., Inc*., 2005 WL 3077654, at *3 (S.D.N.Y. 2005).

Defendants contend that proof relevant to the issues is located on Avomex's computers, servers, files and records and all documents concerning plaintiff's employment as a leased employee are located at the corporate offices in Dallas.  Defendants do not provide details regarding what these documents are nor do they provide an explanation as to why transporting the documents would be inconvenient.  Neither defendant has submitted any evidence regarding the difficulty involved in bringing the relevant documents to New York.  *See Varnelo v. Eastwind Transport, Ltd.*, 2003 WL 230741, at *24 (S.D.N.Y. 2003).  Therefore, this factor does not weigh in favor of transfer.

**C.      The locus of operative facts**

Plaintiff argues that the case should remain in the Northern District of New York because plaintiff, "suffered the effects" of defendant's decision to fire him in New York.  The "locus of

30

operative facts is traditionally an important factor to be considered in deciding where a case should be tried." *Chong v. Healthtronics, Inc.*, 2007 WL 1836831, at *12 (E.D.N.Y. 2007).  In cases involving claims of age discrimination and retaliation, courts have routinely transferred cases to the district where the principal events occurred including: where the plaintiff was supervised from; where the plaintiff received all directives, instructions and policy guidelines pertaining to his employment; where the decisions regarding the plaintiff's employment are made; and where the plaintiff was advised of the changes in his employment.  *Tralongo*, 2007 WL 844687, at *3 (citation omitted); *Derthick*, 1992 WL 249951, at *5.

Avomex asserts that plaintiff flew to Fort Worth, Texas to interview for the job with Avomex; received and accepted his job offer in Texas; received all of his new hire paperwork in Texas; faxed all of his paperwork back to Texas and received his training in Texas and Mexico.  AMS asserts that all decisions, meetings and/or discussions relevant to plaintiff's employment with Avomex took place in Texas.  Further, AMS' payroll is processed in Texas, payroll taxes are paid from Texas and W-2 wage and tax statements are prepared in Texas.  Plaintiff does not dispute these assertions and admitted in the complaint that, "his day-to-day performance of his duties as Northeast Regional Manager were supervised by members of Avomex's senior management".   Accordingly, a substantial portion of the facts relevant to plaintiff's causes of action occurred in Texas.

Plaintiff argues that discussions with defendant regarding plaintiff's termination were allegedly conducted via telephone between plaintiff in New York and defendant in Texas.  However, this factor is not enough to retain venue in this jurisdiction.  *See Chong*, 2007 WL 1836831, at *12 (venue transferred from New York to Georgia as the plaintiff's employment was

31

negotiated in Georgia, the decision to hire the plaintiff was made in Georgia, the plaintiff reported to supervisors in Georgia, the plaintiff was paid out of Georgia and the decision to terminate the plaintiff was made in Georgia).  Accordingly, this factor weighs heavily in favor of transfer.

### D.      Plaintiff's choice of forum

A "plaintiff's choice of forum is given significant weight and will not be disturbed, unless the balance of factors weigh strongly in favor" of the defendant. *800-Flowers, Inc.*, 860 F.Supp. at 135.  However, the emphasis placed on a plaintiff's choice is "diminished where . . . the facts giving rise to the litigation bear little material connection to the chosen forum". *Butcher*, 1998 WL 437150, at *9 (citations omitted) (deference to the plaintiff's choice was minimized because many of the witnesses and the defendant/corporation resided in Michigan and all documents related to the defendant's decisions were located in Michigan).  This factor is also given less weight when the plaintiff's claim arises from employment with a foreign corporation for whom he worked for outside of New York for many years before moving to New York for unrelated reasons. *See Tralongo*, 2007 WL 844687 at *4 (holding that because the claim arose from the plaintiff's employment with a Pennsylvania company for whom he worked in Pennsylvania for many years before moving to New York for unrelated reasons, the Court declined to give this factor much weight).  A party's residence in a chosen forum, without more connecting a case in that forum, is insufficient to keep a case in that forum. *Cower v. Albany Law Sch. of Union Univ.*, 2005 WL 1606057, at *3 (S.D.N.Y. 2005).

In this matter, the sole connection to the Northern District of New York is plaintiff's residence.  Defendants claim that plaintiff moved to the Northern District of New York two

32

months prior to his termination.[18]  *See Daou v. Early Advantage, LLC*., 410 F.Supp.2d 82

(N.D.N.Y. 2006) (holding the main events leading to the dispute occurred in Connecticut where

plaintiff resided and worked for almost five years prior to his termination - the plaintiff moved to

New York in September of 2004 and was fired in February 2005).  Based upon the record, the

Court is unable to conclude that New York has a material connection to this litigation.  The

material witnesses, principal place of business of both defendants, and location of operative facts

are in Texas.  Therefore, plaintiff's choice of forum is not entitled to great weight.

### E.      Familiarity with applicable law

In a motion to transfer pursuant to § 1404(a), the "governing law" factor is to be accorded

little weight because federal courts are deemed capable of applying the substantive law of other

states.  *See Vassallo v. Niedermeyer*, 495 F.Supp. 757, 760 (S.D.N.Y. 1980) (internal citation

omitted) (holding that the law of another jurisdiction is a factor accorded little weight on a motion

to transfer, especially in an instance such as this where no complex questions of foreign law are

involved).

Plaintiff's NYSHRL claims are analyzed under the same framework as his ADEA claims.

Therefore, the district court in Texas can ably interpret and apply New York law.  *See Tralongo*,

2007 WL 844687 at *4, n. 7.  Accordingly, this factor does not favor either venue.

### F.      Availability of Process

Avomex claims that they intend to call a number of non-party witnesses that may not be

compelled to testify if the case is tried in the Northern District of New York.  However, the

parties do not identify witnesses that would be unwilling to testify and do not establish that

---

[18] Plaintiff did not respond to that assertion.

compulsory process will be necessary.  Therefore, this factor is neutral in the Court's analysis.

*Atl. Recording Corp., v. Project Playlist, Inc*., 603 F.Supp.2d 690, 697 (S.D.N.Y. 2009).

### G.    Interests of Justice and Trial Efficiency

This factor relates to judicial economy.  *Atlantic Recording Corp*., 603 F.Supp.2d at 698.

Although docket conditions and calendar congestion, alone, are insufficient to support a transfer

motion, they are properly considered and entitled to "some weight".  *Chong*, 2007 WL 1836831,

at *15.

Defendants argue that this dispute is likely to be resolved earlier in the Northern District

of Texas.[19]  In 2007, the Northern District of Texas had 5,312 filings with 324 cases per judge (14

judgeships).  The time from filing to disposition was 6.8 months and 19.4 months from filing to

trial for civil cases.  Conversely, there were 1,956 filings in the Northern District of New York

with 586 cases per judge (5 judgeships).  The median time from filing to disposition for civil

cases was 12.6 months and the median time from filing to trial for civil cases was 40.5 months.

*See* Federal Court Management Statistics, U.S. District Court Judicial Caseload Profile, at *www.*

*uscourts.gov/cgi-bin/cmsd2007.pl*.[20]  Defendants argue that these statistics establish that transfer

to the Northern District of Texas may facilitate the more efficient and speedy resolution of the

matter.

---

[19] Plaintiff does not present any argument with regard to trial efficiency and the interests of justice.  Rather, plaintiff reiterates that he will incur burdens and hardship, financial and otherwise, if compelled to proceed in the Northern District of Texas.

[20] A review of the Statistics for 2008 reveals that the total number of filings in the Northern District of New York is 1,957 (with 5 Judgeships/total number of cases 529) and 13.5 months between filing and disposition and 44 months between filing and trial for civil cases.  The total number of filings in the Northern District of Texas was 5,076 (with 12 Judgeships/total number of cases 325) with 7.4 months between filing and disposition and 24.1 months between filing and trial for civil cases.  *See* www.uscourts.gov/cgi-bin/cmsd2008.pl. (last visited December 4, 2009).

34

Although the total number of filings in the Northern District of Texas is greater, given that the average caseload per judge in the Northern District of New York is almost twice that of a judge in the Northern District of Texas, this factor weighs in favor of a transfer. *See Butcher*, 1998 WL 437150, at *11; *see also Westwood Ventures, Ltd. v. Forum Fin. Group*, 1997 WL 266970, at *6 (S.D.N.Y. 1997). Moreover, the fact that the case is in the very early stages of litigation and that no discovery has been completed weighs in favor of transfer.

### H.     Means of parties

The convenience of the parties and of counsel is not a decisive factor. *Derthick*, 1992 WL 249951, at *5; *see also Kwatra*, 1996 WL 694444, at *3. However, where there is disparity between the parties, such as an individual suing a large corporation, the Court may consider the relative means of the parties in determining whether to transfer. *Coutlman v. Nat'l R.R. Passenger Corp.*, 857 F.Supp. 231, 234 (E.D.N.Y. 1994) (citation omitted). Since plaintiff is an individual and defendants are corporations, the "relative means of the parties" weighs in favor of plaintiff. *See Chong v. Healthtronics*, 2007 WL 1836831, at *13 (E.D.N.Y. 2007).

Considering all of the relevant factors, the Court finds that defendants have met their burden of proving that the Northern District of Texas is the proper forum for this matter.

### CONCLUSION

Accordingly, it is hereby

**ORDERED** that Avomex's motion for dismissal based upon lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that AMS' motion for an order dismissing plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that defendants' motions for an order dismissing plaintiff's complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) (Dkt. Nos. 10, 14) are **DENIED**; and it is further

**ORDERED** that defendants' motions for a transfer of venue (Dkt. Nos. 10, 14) are **GRANTED**, therefore, pursuant to 28 U.S.C. § 1404(a), the Clerk of this Court shall transfer this action to the United States District Court for the Northern District of Texas; and it is  further

**ORDERED** that the Clerk of this Court shall advise the Clerk of the Northern District of Texas, in writing, of the entry of this Order and shall provide that Clerk with a certified copy of this Order and of the docket sheet for this action, together with all information necessary for the Clerk of the Northern District of Texas to access electronically the documents filed in this action; and it is further

**ORDERED** that the Court hereby waives the ten (10) day waiting period provided for in Local Rule 83.6; and it is further

**ORDERED** that plaintiff's cross motion to amend the complaint (Dkt. No. 16) is **DENIED** as moot.

**IT IS SO ORDERED.**

Date:   January 14, 2010

Norman A. Mordue
Chief United States District Court Judge

36